UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

BARBARA ERNST and BARBARA )
SUPENO, )
 )
    Plaintiffs, )
 )
v. ) Case No. 5:14-cv-59
 )
BARBARA "CAROL" KAUFFMAN, JEFF )
KAUFFMAN, JOHN CARRIGAN, LINDA )
CARRIGAN, and the TOWN OF )
ADDISON, VERMONT, )
 )
    Defendants. )

## DECISION ON MOTION FOR RECONSIDERATION
(Doc. 103)

Plaintiffs Barbara Ernst and Barbara Supeno move for reconsideration of the portion of the court's September 30, 2014 Opinion and Order (Doc. 72) granting a "special motion to strike" under 12 V.S.A. § 1041. Plaintiffs argue that the Vermont Supreme Court's decision in *Felis v. Downs Rachlin Martin, PLLC*, 2015 VT 129, constitutes an intervening change in controlling law. (Doc. 103.) Defendant Carol Kauffman opposes Plaintiffs' Motion (Doc. 104), as do Defendants John Carrigan and Linda Carrigan (the Carrigans) (Doc. 107). Plaintiffs have filed a consolidated Reply. (Doc. 108.)

### Factual Background

The court presents here only a brief statement of facts drawn from Plaintiffs' Amended Complaint (Doc. 34), and other evidence as contemplated by 12 V.S.A. § 1041(e)(2). A more complete factual background is set forth in the court's September 30, 2014 Opinion and Order (Doc. 72).

From 2009 to 2011, Plaintiffs regularly attended Selectboard and planning board meetings and commented on proposed changes to townwide zoning regulations—a matter of public concern in the Town of Addison. (Docs. 48-9; 48-10; 38-3.) Plaintiffs also attended several school board meetings, at which one of the topics of discussion was whether the Town's schools should be unified with those of other towns, and also attended a local forum on this topic. (Docs. 38-6; 48-16 at 4.) These were matters that could affect the entire town, and Plaintiffs voluntarily participated in the public discussion of both issues.

On April 11, 2011, an anonymous nine-page letter was sent to numerous residents of the Town of Addison, including all members of the Selectboard, school board, planning board, and development and review board, as well as local newspapers. (Doc. 34, ¶ 38.) The letter was entitled "The TRUTH About the BARBARAS." (Doc. 34-1 at 3.) The letter contained information drawn from court and police records involving Plaintiffs that supposedly demonstrated that Plaintiffs were "masters at falsifying information, using harassment as a crutch whenever confronted in their demonical schemes, lying openly, distorting facts, [and] using the court system for extortion . . . ." (*Id.* at 4.)

The letter went on to state that Plaintiffs were "felons who are running scams," that Plaintiff Supeno was a drug addict who lied about her mother's illness to avoid court dates, and that Plaintiffs do not pay their creditors or their taxes. (*Id.* at 4–5, 8.) It encouraged the reader to share the letter with neighbors, businesspeople, and elected officials. (*Id.* at 4.) As the court previously concluded, the letter contained "a mixture of true statements, false statements, and editorial characterization." (Doc. 72 at 11.) The letter did not advocate for a particular outcome on the issues of zoning regulations or school unification; and in fact did not mention those issues at all.

Neither Plaintiff was a candidate for public office at the time that the anonymous letter was disseminated. In February 2011, Ms. Supeno had nominated herself as a candidate for a seat on the Addison Planning Commission. (Doc. 48-15.) The Selectboard had, however, appointed a different person, Kim Provencher, to fill the position in April 5, 2011 (before the anonymous letter was sent). (Doc. 48-9 at 49.)

According to Plaintiffs, Carol Kauffman wrote the April 11, 2011 anonymous letter with information provided by her husband Jeff Kauffman (the Selectboard chair) and by Linda Carrigan. (Doc. 34, ¶¶ 39–40.) Plaintiffs assert that, over their objection, Carol Kauffman read aloud selections from the letter at Selectboard meetings in June, July, and August 2011. (*Id.* ¶ 42.) There is no evidence before the court regarding what portions of the letter Carol Kauffman read. The minutes from the August 2011 Selectboard meeting recount that Carol Kauffman "summarize[d] at great length events, correspondence, e-mails, etc., regarding the school unification vote, school board meetings, selectboard meetings, legal opinions, confidential matters, and conflict of interest." (Doc. 48-9 at 55.)

In a July 5, 2011 letter addressed to the Selectboard, Plaintiffs asserted that the April 5, 2011 appointment of Kim Provencher to the Planning Commission was improper. Plaintiffs requested that an "official vote be taken of the Planning Commission" regarding the Planning Commission seat, but with two of the members disqualified from voting due to their "mis-actions" and "major Conflicts of Interest." (Doc. 38-4 at 8.) Also in the July 5, 2011 letter, Plaintiffs asserted that the information that Carol Kauffman presented at the June 2011 Selectboard meeting "included issues regarding Addison Central School governance[,] which is strictly under the jurisdiction of the Addison Central School Board Directors not the Addison Selectboard." (*Id.* at 2.)

3

In November 2011, John Carrigan presented to the Selectboard a 20-page document containing information about some of the lawsuits discussed in the April 11, 2011 anonymous letter, as well as other disputes involving Plaintiffs. (Doc. 34, ¶ 43; *see also* Doc. 34-2.) The minutes from the Selectboard's November 2011 meeting reflect that "John Carrigan gave the board a history of lawsuits, suits, liens, small claims court, civil court filed by or against Barbara Supeno & Barbara Ernst." (Doc. 48-9 at 66.)

### Procedural History

On September 30, 2014, this court granted in part Defendants' motions to strike under Vermont's anti-SLAPP statute, 12 V.S.A. § 1041. (Doc. 72.) Section 1041 defines a strategic lawsuit against public participation (SLAPP suit) as "an action arising from the defendant's exercise, in connection with a public issue, of the right to freedom of speech or to petition the government for redress of grievances under the U.S. or Vermont Constitution." 12 V.S.A. § 1041(a). The statute authorizes defendants to file a "special motion to strike" to halt SLAPP suits that are brought against them. *Id.* § 1041(b). Section 1041 states that a defendant's exercise of her speech and petition rights includes "any written or oral statement made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law." *Id.* § 1041(i)(1).

In its September 30, 2014 decision, the court granted the special motion to strike "with respect to claims arising from any statements made at Selectboard hearings by defendant Carol Kauffman." (Doc. 72 at 12.) The court also granted the Carrigans' special motion to strike with regard to the 20-page document presented to the Selectboard by Defendant John Carrigan in November 2011. (*Id.* at 13.) The court concluded that Carol Kauffman's statements at the Selectboard hearings and John Carrigan's presentation of the 20-page document to the

Selectboard were protected by § 1041(i)(1) because they were made before an official proceeding. Noting that the Vermont Supreme Court had not interpreted § 1041, the court relied on the text of the statute and on decisions from California, which has a similar anti-SLAPP statute. (Doc. 72 at 4–5.) The court reasoned that subsection (i)(1) "contains no requirement that the statement concern 'an issue of public interest,'" and that "[i]nstead, any statement made in the course of a selectboard meeting qualifies as the exercise of free speech giving rise to the right to file a special motion to strike." (Doc. 72 at 10.)

On October 16, 2014, the court denied motions to reconsider and to amend the September 30, 2014 decision. (Doc. 81.) The Carrigans sought interlocutory appeal, and Plaintiffs cross-appealed. On February 22, 2016, the Second Circuit dismissed the interlocutory appeals for lack of appellate jurisdiction. *Ernst v. Carrigan*, Nos. 4-3925-CV(L), 14-4025(XAP), 14-4171(CON), 2016 WL 690986 (2d Cir. Feb. 22, 2016), *reh'g denied* Mar. 17, 2016. Plaintiffs filed their Motion to Reconsider on March 13, 2016. (Doc. 103.) On October 16, 2015—while the action was on appeal to the Second Circuit—the Vermont Supreme Court issued its decision in *Felis v. Downs Rachlin Martin, PLLC*, 2015 VT 129.

## Analysis

### I.   Standard for Reconsideration

The standard for granting a motion to reconsider "is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A motion to reconsider should not be granted to relitigate an issue already decided. *Id.* "The major grounds justifying reconsideration are an intervening change of controlling law, the

5

availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation omitted).

## II. Timeliness of Plaintiffs' Motion

The Carrigans assert that Plaintiffs' March 13, 2016 Motion to Reconsider is untimely, arguing that a motion to reconsider an interlocutory order must be filed within 14 days following the date of the order or the date of the intervening change of controlling law. (Doc. 107 at 2.) As described above, the court's orders that are at issue were filed in September and October 2014. *Felis* was decided on October 16, 2015.

Under the Local Rules, "[a] motion to reconsider a court order, other than one governed by Fed. R. Civ. P. 59 or 60, must be filed within 14 days from the date of the order." L.R. 7(c). Here, Plaintiffs' Motion to Reconsider is a motion "other than one governed by Fed. R. Civ. P. 59 or 60" because the decisions that are the focus of Plaintiffs' Motion are not judgments for the purposes of Rule 59(e), nor are they final for the purposes of Rule 60(b).[1] Thus, a strict application of Rule 7(c) would seem to have required Plaintiffs to file their Motion no later than 14 days after the court's October 16, 2014 decision.

Although this court generally requires full compliance with its Local Rules, the court may excuse non-compliance where "strict application of the local rules would lead to an unjust result." *Pietrangelo v. Alvas Corp.*, 664 F. Supp. 2d 420, 431 (D. Vt. 2009) (quoting *Phoenix Global Ventures, LLC v. Phoenix Hotel Assocs.*, 422 F.3d 72, 75 (2d Cir. 2005)). The Carrigans appear to concede that it would be unjust to expect Plaintiffs to have filed their Motion prior to October 16, 2015, when the Vermont Supreme Court decided *Felis*. (*See* Doc. 107 at 3.)

---

[1] The court's fall 2014 decisions certainly are not appealable—that was the upshot of the Second Circuit's February 22, 2016 decision dismissing the interlocutory appeals.

6

Obviously, Plaintiffs could not have argued that *Felis* constituted an intervening change in controlling law until the *Felis* decision was actually issued.

The Carrigans argue, however, that Plaintiffs had notice of the *Felis* decision in late 2015, and should have filed their Motion to Reconsider at that time. (Doc. 107 at 3.) That position, however, ignores the fact that the appeal to the Second Circuit was pending then. The Carrigans do not explain how this court could have had jurisdiction to entertain a motion to reconsider while the case was on appeal with the Second Circuit. *Cf. Weiss v. Hunna*, 312 F.2d 711, 713 (2d Cir. 1963) ("[O]nce plaintiff had filed a notice of appeal, the district court was divested of jurisdiction to grant or deny relief under either Rule 59 or Rule 60(b) except with our permission."). For the same reason, the Carrigans cannot claim any prejudice, since even if Plaintiffs had filed their Motion in late 2015, the court could not have ruled on it.

The fact that an appeal was pending distinguishes this case from the cases that the Carrigans cite. *See Utica Mut. Ins. Co. v. Clearwater Ins. Co.*, No. 6:13-cv-1178 (GLS/TWD), 2015 WL 4496374, at *2 (N.D.N.Y. July 23, 2015) (motion for reconsideration filed more than four months after purported intervening change in controlling law was untimely), *appeal docketed*, No. 16-652 (2d Cir. Mar. 3, 2016); *Bauer-Ramazani v. Teachers Ins. & Annuity Ass'n of Am.—Coll. Ret. & Equities Fund*, No. 1:09-cv-190-jgm, 2012 WL 3887092, at *2 (D. Vt. Sept. 7, 2012) (noting "lack of diligence" where party seeking reconsideration based on newly-discovered evidence waited more than four months from discovery of evidence to file reconsideration motion). Notably, the courts in both *Utica Mutual* and *Bauer-Ramazani* suggested that the outcome might have been different if there had been an explanation for the delay. *See Utica Mutual*, 2015 WL 4496374, at *2; *Bauer-Ramazani*, 2012 WL 3887092, at *2. Here, the explanation is that an appeal was pending.

7

Plaintiffs filed their Motion for Reconsideration less than 30 days after the Second Circuit issued its opinion on the interlocutory appeals, and even *before* the Second Circuit denied the petition for rehearing. The court concludes that strict compliance with Local Rule 7(c) would be unjust in this case, and that Plaintiffs' Motion is timely.

### III. Effect of *Felis*

Carol Kauffman and the Carrigans do not dispute that *Felis* constitutes an intervening change in controlling law. In that case, the Vermont Supreme Court held that "the 'in connection with a public issue' requirement of 12 V.S.A. § 1041(a) must be met in any motion to strike under the anti-SLAPP statute, regardless of the type of activity." *Felis*, 2015 VT 129, ¶ 52. In light of that authoritative interpretation of Vermont law, the court's prior conclusion that § 1041(i)(1) contains no requirement that the statement concern "an issue of public interest" cannot stand. Thus, § 1041(i)(1) only protects Carol Kauffman's statements before the Selectboard and John Carrigan's presentation of the 20-page document to the Selectboard if those activities were "in connection with a public issue." Carol Kauffman and the Carrigans argue that *Felis* should not change the outcome in this case because their activities, they say, *did* concern matters of public interest. (Doc. 104 at 1; Doc. 107 at 4.)

### IV. Burden of Proof and Scope and Nature of the SLAPP hearing

In light of the guidance provided by the *Felis* decision, the court reviews the structure of the anti-SLAPP claim in Vermont. The elements of the claim are:

1. The defendant asserting the SLAPP motion to strike must be sued "in an action arising from the defendant's exercise . . . of the right to freedom of speech or to petition the government for redress of grievances." 12 V.S.A. § 1041(a).

8

2. Such statements are protected only if they are made "in connection with a public issue." *Id.*

3. The requirement that the content of a protected statement concern issues of public interest applies to statements made before a governmental body. *Felis*, 2015 VT 129, ¶ 52.

The Defendant has the burden of proving that he or she made statements concerning matters of public interest. If this burden is met, the plaintiffs may continue to oppose the motion to strike by proving that the speech at issue was "devoid of any reasonable factual support and any arguable basis in law." 12 V.S.A. § 1041(e). The statute provides for an expedited hearing conducted on the basis of the pleadings and affidavits from the parties. No discovery is available except upon order of the court.

With this background in mind, the court turns to the issue of whether Defendants have met their burden of proof on the issue of the public nature of the statements each made at Selectboard meetings.

### A.    Statements by Carol Kauffman

In the Amended Complaint, Plaintiffs allege that Carol Kauffman read "selections from the defamatory letter" at three separate meetings of the Town Selectboard. (Doc. 34 ¶ 42.) Plaintiffs allege that "[t]he letter and its contents in no way related to any business pending before the Board" and that although they objected, "their objections were overruled and Ms. Kauffman was permitted to read the false and defamatory contents of this letter into the record." (*Id.*) The letter was attached to the Amended Complaint and forms part of the evidence before the court on the motion to strike. The letter is an ad hominem attack on Plaintiffs which mixes strong expressions of opinion ("These women exhibit all the symptoms of SocioPaths (Same as a PsychoPath but they do not kill.) . . . Be very careful with them, they are dangerous. . . . They

9

may seem nice at first but you can get burnt badly." (Doc. 34-1 at 10)) with uncomplimentary details about Plaintiffs' legal and personal histories.

Ms. Kauffman's motion to strike does not disclose what portions of the April letter she read at the Selectboard meetings in June, July and August 2011. She states only that she attended these meetings and spoke about the issues which are described in the official minutes. The minutes include no reference to Plaintiffs' personal history, conduct, or character. There is no basis in the affidavit or memorandum of law for determining what she said and whether it concerned public issues or merely personal attacks.

In its previous order, the court granted the motion to strike concerning Ms. Kauffman's statements made in public meetings because it interpreted § 1041 to authorize an order striking the complaint regarding *any* statement made at a governmental meeting. The court concluded that statements made at such a meeting would qualify for protection subject only to Plaintiffs' opportunity of proving that they lacked any basis in fact or law. Since that order issued, the Vermont Supreme Court's decision in *Felis* has clarified the meaning of the Vermont statute. It is insufficient for purposes of § 1041 to prove only that a statement was made at a public meeting. A defendant must also prove that the content of the statement was of a public nature or of public interest.

In order to meet her burden of proof, Ms. Kauffman must prove the public nature of her statements. In this case, she has provided no evidence of what she said at the Selectboard meetings except that her statements were derived from the April 2011 letter. The April letter contains many passages which are either subjective character attacks or descriptions of private conduct of no public interest. There are a few passages which could be interpreted to raise questions about Plaintiffs' positions on matters of public interest such as Plaintiffs' support of

10

zoning restrictions. These represent a tiny minority. Most references in the April 2011 letter refer to particular zoning and permit disputes involving plaintiffs and their neighbors. A legal dispute does not become a matter of public interest just because it involves a case in court or a proceeding before a municipal body. See *Felis*, ¶ 24 (issues in a divorce action not matters of public significance). Some statements in a legal dispute may qualify as matters of public interest; as Justice Dooley indicated, others may involve nothing more than the application of settled law to the facts of an individual dispute. Without any account of what Ms. Kauffman actually said at the Selectboard meetings, she cannot meet her burden of proof on the motion to strike.

### B. Statement by John Carrigan

Mr. Carrigan takes a similar position. In his motion to strike, he admits to presenting a compilation of documents with editorial commentary related to Plaintiffs' alleged refusal to pay tradesmen. This document is attached to the Amended Complaint as Ex. 2 and is entitled "Lawsuits, Suits, Liens, Small Claims Court, Civil Court Filed By or Against Barbara Supeno & Barbara Ernst" (Doc. 34-2 at 2.) Although his memorandum recounts his version of *Plaintiffs'* public activities in great detail, he fails to offer any detail about his own statements which he admits to making at various public meetings. He states that his exercise of free speech through the distribution or public reading of the content of the April 2011 letter and the related list of lawsuits and liens is protected by § 1041 because of the public locations in which he acted and Plaintiffs' public profile within Addison as activists on municipal issues. (Doc. 48 at 22–23.)

As *Felis* makes clear, the location of the speech in a public setting is insufficient to support a motion to strike. What is needed is an account of what was said so that the court can consider whether the topic was of public interest (protected) or spitefully personal (unprotected).

11

Many portions of the April 2011 letter fall into the second category. After *Felis*, it is insufficient to argue only that the statements were made in a public forum or that they concerned people active in public life. Defendants plainly have the burden of proving that the specific statements they made were public in nature. Like Ms. Kaufmann, Mr. Carrigan has failed to meet this burden because he has provided no competent record evidence of the content of his statements and their public nature.

In his opposition to the motion for reconsideration, Mr. Carrigan describes "the testimony [he] presented before the Addison Selectboard" as a matter of public interest because Plaintiff Supeno once ran for a position on the Town Planning Commission and both Plaintiffs were involved in the community debate over school unification and local zoning matters. (Doc. 107 at 4-5.) But the "lawsuits, suits, and liens" document makes no reference to school unification or local zoning matters. (*See* Doc. 34-2.) The import of that document is that Plaintiffs do not pay their bills. As the anonymous author states in the conclusion:

> In the last presentation where I fought against a SMEAR campaign I listed a group of people who had been accused by ONLY these women. I am adding to [] the accused list and in addition will include those persons or business[es] that were not paid or forced through the gauntlet of court, legal or just contrived inconveniences to delay payment or no payment.

(*Id.* at 18.)

It is insufficient to argue that anything which reflects poorly on Plaintiffs affects their credibility and thus concerns a matter of public interest because there are topics on which they have spoken out publicly. Were this the case, any person who has spoken at a municipal meeting or taken a public position in a letter to the editor would lose the protection of the law of libel and slander even on issues unrelated to a public issue. It is this unconfined expansion of the SLAPP

initiative which Justice Dooley spoke out against in *Felis* when he wrote in connection with motions to strike filed against pleadings in lawsuits:

> Although the establishment of a bright line rule [in California extending SLAPP protection to statements made in a public forum regardless of content] may have simplified the issues in some litigation, it nevertheless dramatically increased the use of the anti-SLAPP remedy in suits far afield from the SLAPP suit paradigm . . . .

*Felis*, 2015 VT 129, ¶ 49.

This case presents similar problems. Defendants sharing documents which describe largely personal behavior—unproven as to their truth—seek protection on the ground that the subjects have spoken out in public about school consolidation and zoning changes. In the absence of a specific showing that the statements alleged to be defamatory addressed issues of public interest, a claim so general and so unsupported by any evidence of what Defendants actually said is insufficient to deprive Plaintiffs of their traditional tort remedies. Defendants retain their First Amendment protections, including those related public figures and proof of actual malice if these apply. But they cannot strike the lawsuit by stating that they said something, unspecified, about a person who has previously taken a public position in municipal matters largely unrelated to the subject of the defamatory statements.

## Conclusion

Plaintiffs' Motion to Reconsider (Doc. 103) is GRANTED. The Motions to Strike (Docs. 38 and 48) are DENIED in all respects.

Dated at Rutland, in the District of Vermont, this 20th day of April, 2016.

_____
Geoffrey W. Crawford, Judge
United States District Court